## Case No. 9,617a.

### MILNE v. The JOHN COOK.

[4 Betts, D. C. MS. 39.]

District Court, S. D. New York.    Feb. 14, 1844.

SEAMEN—WAGES—COPARTNERSHIP.

[A contract to sail a vessel in copartnership for a share of the earnings affords no remedy in rem for wages.]

[This was a libel for wages by John Milne against the sloop John Cook.]

MILNE (MANCHESTER v.). See Cases Nos. 9,006 and 9,007.

## Case No. 9,618.

### MILNE ads. NEW YORK.

[2 Paine, 429.] [1]

Circuit Court, New York. [2]

SHIPPING — PENAL ACTION — NEGLECTING TO REPORT PASSENGERS—CONSTITUTIONAL LAW —STATE POLICE REGULATIONS.

1. The act of New York of February 11, 1824 [Laws 1824, p. 27], imposing penalties for neglecting to report passengers brought from foreign countries into the port of New York, contemplates two distinct offences: the one where the vessel comes directly from the foreign country to New York, or circuitously, having touched at some other port in the United States; the other, where the passengers have been landed at some other place, or put on board some other vessel, with the intention of proceeding to the city of New York; and a count embracing the whole of the first branch of the act is not in the alternative.

2. The foregoing law is not unconstitutional. It relates to the internal police of the state, and is, therefore, properly within the scope of state

[1] [Reported by Elijah Paine, Jr., Esq.]
[2] [District and date not given. 2 Paine includes cases decided from 1827 to 1840.]

legislation. Neither does it conflict with any existing act of congress.

[This was a suit by the mayor, aldermen, and commonalty of the city of New York against George Milne.]

THOMPSON, Circuit Justice. This is an action to recover certain penalties given by a statute of the state of New York, passed in the year 1824, concerning passengers in vessels brought from foreign countries into the port of New York, and founded on the neglect to report his passengers, according to the provisions of the act.

The declaration contains two counts: The first is special, setting out the act and its provisions so far as it relates to this case, and averring the facts which are supposed to bring the case within the act. The main objection relied upon to the form of this count, is, that the offence is laid in the alternative. This objection we think not well founded. The objection seems to be founded on a mistaken view of the act. The act contemplates two distinct offences: the one where the vessel arrives with the passengers in the port of New York, and the other is where the passengers have been landed at some other place, or put on board some other vessel, with the intention of proceeding to the city of New York. Under the first branch of the act, the penalty is incurred by coming directly from the foreign country to New York, or circuitously, having touched at some other port in the United States. The offence alleged to have been committed in this case, falls under this first branch of the act; and the manner in which the offence is alleged, is not in the alternative, looking to one or the other of two offences. The offence is the coming into the port of New York, and whether directly from the foreign port, or circuitously, by the way of some other port in the United States, is immaterial.

The second count is according to the form prescribed by the late revision of the laws of this state, and we see no objection to it. But the great objection relied upon is, that the act is unconstitutional, on the ground of its interfering with powers of congress to regulate commerce. A full answer to this objection is contained in the doctrine of the supreme court of the United States, in the case of Wilson v. Black Bird Creek Marsh Co., 2 Pet. [27 U. S.] 252. This act does not conflict with any existing act of congress; and if it should be admitted that the subject of this law comes under the cognizance of the general government under the power to regulate commerce, until that power is exercised it does not conflict with state legislation. But we think the subject-matter of this law is properly within the scope of state legislation; it relates entirely to the internal police of the state, and falls within that class of subjects which the supreme court says in Gibbons v. Ogden, 9 Wheat. [22 U. S.] 203, forms a portion of that immense mass of legislation which embraces everything within a state not surrendered to the general government, viz., inspection laws, quarantine laws of every description, and laws regulating the internal commerce of a state; also, to regulate its own police.

[NOTE. This case was taken to the supreme court on certificate of division of opinion, the following point being certified for the decision of the supreme court: "That the act of the legislature of New York, mentioned in the plaintiff's declaration, assuming to regulate trade and commerce between the port of New York and foreign ports, is unconstitutional and void." Opinions were filed by Mr. Justice Barbour and Mr. Justice Thompson, Mr. Justice Story filing a dissenting opinion. The conclusion of the court was that so much of the section of the act of the legislature of New York as applies to the breaches assigned in the declaration does not assume to regulate commerce between the port of New York and foreign ports, and that so much of said section is constitutional. 11 Pet. (36. U. S.) 102.]